UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KATHERINE ROLLINS                                    CIVIL ACTION

VERSUS                                               NO. 10-2922

MICHAEL J. ASTRUE, COMMISSIONER                      SECTION "S" (3)
SOCIAL SECURITY ADMINISTRATION

REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of

the Commissioner denying her application for a period of disability and disability insurance benefits

under Title II of the Social Security Act ("SSA") and supplemental security income under Title XVI

of the SSA. The matter has been fully briefed on cross-motions for summary judgment and is ripe

for review.  For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary

judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be

DISMISSED WITH PREJUDICE.

I.      BACKGROUND

Plaintiff filed applications for disability insurance benefits and supplemental security income

under Titles II and XVI of the SSA on November 5, 2009, alleging a period of disability since June

30, 2008. [Adm. Rec. at 95-105].  On February 13, 2009, plaintiff's applications were denied at the

initial level. [*Id.* at 39-41].  Plaintiff timely requested an administrative hearing, and on July 10,

2009, an Administrative Law Judge ("ALJ") held a hearing. [*Id.* at 8-38].  Both plaintiff and a

vocational expert ("VE"), Ms. Bailey, testified at the hearing. [*Id.*].

On September 25, 2009, the ALJ rendered an opinion in which he found plaintiff not disabled during the period from June 30, 2008 through the date of the decision. [*Id.* at 42-54]. The ALJ concluded that plaintiff has the following severe impairments: obesity, hypertension and diabetes mellitus. [*Id.* at 47]. The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work and imposed the following further limitations:

– pushing and pulling at the sedentary level only;
– requiring a sit/stand at-will option;
– unable to operate foot controls;
– unable to climb ladders, ropes or scaffolds;
– able to do occasional stooping, crouching, kneeling, crawling or climbing ramps or stairs;
– able to do frequent handling, fingering and feeling.

[*Id.* at 49].

Plaintiff timely filed a request for review. On July 7, 2010, the Appeals Council denied plaintiff's request for review. [*Id.* at 1-3]. Plaintiff then filed this action under 42 U.S.C. § 405(g) for review of the final decision of the Commissioner.

## II.    STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them.

*Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

## III.   ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant, such as the plaintiff, is considered disabled only if her physical or mental impairment is so severe that she is unable to do not only her previous work, but cannot, considering her age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which she lives, whether a specific job vacancy exists, or whether she would be hired if she applied for work.  42 U.S.C. § 1382(a)(3)(B).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901 t - 416.988 (1995).   The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.   *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment

must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 239 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)).  If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy.  *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995).  Step V also requires the Commissioner to use the medical-vocational guidelines to make his disability determination.  *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history.  *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence."  *Id*.

## IV.   ISSUES ON APPEAL

There is one issue on appeal:

(1)     Whether the ALJ erred when he rejected the findings of plaintiff's primary treating physician, Eva Blanche Centanni, M.D.

## V.   ANALYSIS

5

1.      **Whether the ALJ erred when he rejected the findings of plaintiff's primary treating physician, Eva Blanche Centanni, M.D.**

Plaintiff argues that the ALJ erred when he rejected Dr. Centanni's finding and offered no basis for the rejection.  Plaintiff also contends that the findings of the VE – who testified at the hearing – can not offset Social Security Ruling ("SSR") 96-9p.  Plaintiff contends that SSR 96-9p permits a finding of disability when a claimant is limited to sedentary work and lacks "good use" of her hands.  Plaintiff notes that Dr. Centanni opined that plaintiff suffers "pain throughout the right arm to the shoulder," "pain in the right hand," and "a feeling of tightness." [Adm. Rec. at 237].  Dr. Centanni thus advised that "tasks requiring significant use of her right hand would be contraindicated by her condition." [*Id.*].  Noting that the ALJ concluded that plaintiff can use her hands for "frequent" handling, fingering and feeling, and that "frequent" means six hours of an eight-hour workday, plaintiff contends that the issue is whether the use of plaintiff's hands for six hours of an eight-hour workday constitutes "significant" or "sustained" use of the hands under SSR 96-9p.

The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability.  *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).  A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).  "The opinion of a specialist generally

6

is accorded greater weight than that of a non-specialist." *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994).

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." *Id.* "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Id.* The treating physician's opinions are not conclusive. *See Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999). The opinions may be assigned little or no weight when good cause is shown. *Greenspan*, 38 F.3d at 237. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts when the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *See Brown*, 192 F.3d at 500; *Greenspan*, 38 F.3d at 237; *Paul*, 29 F.3d at 211.

After review of the ALJ's opinion, the administrative record and the case law, the Court finds that plaintiff's argument lacks merit. The Court finds that the ALJ gave specific reasons for having given little weight to Dr. Centanni's opinion. The ALJ concluded that Dr. Centanni's two-page check-the box form was inconsistent with the medical evidence of record, more restrictive than any other limitations in the record and inconsistent with plaintiff's own testimony. [Adm. Rec. at 51].

On May 21, 2009, Dr. Centanni completed a two-page check-the-box form, in which she noted that plaintiff could not ambulate effectively on a sustained basis without significant pain, could not stand for two hours out of an eight-hour day while lifting or carrying up to 20 pounds, could not alternate standing and sitting for eight hours without walking about or reclining and could

not sit for six hours without elevating her feet to heart level to reduce or preclude edema. [*Id.* at 237-38].  Dr. Centanni also checked the boxes to indicate that on sustained use of plaintiff's hands, she will experience pain throughout her right arm to her shoulder, pain in her right hand, and a feeling of tightness but that she will no experience reduced grip strength on the right. [*Id.* at 237].  Dr. Centanni further checked boxes to indicate that on significant use of her left hand, plaintiff will experience neuropathy and increased pain in the left hand later in the day, and that tasks that require significant use of her right hand would be contraindicated by her condition. [*Id.*].  This two-page, standard form is the only evidence on which plaintiff relies.

Substantial evidence exists in the record to support the ALJ's conclusion that the opinion of Dr. Centanni is inconsistent with other medical evidence and, indeed, her own earlier evaluations. The Court's review of the record of Dr. Centanni's examinations reveals that Dr. Centanni often noted plaintiff's diabetes mellitus Types I and II, hypertension, hypercholesterolemia, hyperlipidemia, thrombophlebitis of deep veins of the upper extremities and a listing of the prescribed medication. [*Id.* at 168-70, 176, 198-99, 213-17, 220-36].  Tellingly, none of these reports recommends limitations because of plaintiff's hands, nor is there any mention in the reports of pain in or limitations due to plaintiff's hands.

The Court recognizes that on October 27, 2009, plaintiff complained to doctors at Ochsner Medical Center ("Ochsner") of redness and swelling in her right hand and arm, but plaintiff also denied pain and stated that "it is just a sense of campiness."  [*Id.* at 187-88, 193].  The doctors assessed plaintiff with right upper extremity deep-vein thrombosis, diabetes and hypertension, well controlled.  [*Id.* at 194].  Plaintiff could move all of her fingers well, and after treatment by the staff

at Ochsner, she stated that her pain was better. [*Id.* at 188].  On discharge, plaintiff had total mobility status and total independence in activities of daily living. [*Id.*].  Dr. Centanni's recommendations are much more restrictive than those suggested by the staff at Ochsner.

In addition, Dr. Centanni's opinion is inconsistent with that of Jack Rentz, M.D.  Dr. Rentz examined plaintiff on January 24, 2009. [*Id.* at 201-04].  While plaintiff told Dr. Rentz that her hands were falling asleep at night and that she had numbness in her hands and fingers, plaintiff did not complain to Dr. Rentz of pain in her hands, and she denied shoulder pain. [*Id.*].  Dr. Rentz found that plaintiff "is independent with her activities of daily living." [*Id.* at 201].  Dr. Rentz concluded that plaintiff had good motor tone with strength 5/5 bilaterally in all muscle groups. [*Id.* at 203].  Significantly, Dr. Rentz found that plaintiff had 5/5 grip strength "with adequate fine motor movements, dexterity and ability to grasp objects bilaterally." [*Id.* at 202].  Plaintiff had no edema, cyanosis or erythema in her extremities. [*Id.*].

Dr. Rentz further found that plaintiff had normal range of motion in her wrists on dorsi flexion, palmar flexion, ulnar deviation and radial deviation. [*Id.* at 204].  She had normal range of motion in her elbow on flexion, pronation and supination. [*Id.*].  And plaintiff had normal range of motion in her shoulder on abduction, adduction, backward elevation, forward elevation, internal rotation and external rotation. [*Id.*].  Dr. Rentz opined that functionally, plaintiff could sit but not walk, and/or stand for a full workday and lift/carry objects without limitations. [*Id.* at 203].  Dr. Rentz did not limit the use of plaintiff's hands.  The ALJ relied on Dr. Rentz's opinion. [*Id.* at 50-51].

Dr. Anthony Scardino, the non-examining state agency medical physician, also examined

plaintiff on February 12, 2009, and his opinion is inconsistent with that of Dr. Centanni's. [*Id.* at 205-12].   Dr. Scardino concluded that plaintiff can occasionally lift and/or carry 20 pounds, frequently lift and/or carry ten pounds, stand and/or walk for at least two hours in an eight-hour workday, sit for about six hours in an eight-hour workday and push and/or pull in an unlimited fashion. [*Id.* at 206].   Significantly, again, Dr. Scardino did not limit the use of plaintiff's hand and explicitly noted that she had no manipulative limitations. [*Id.* at 208].   The ALJ also relied on and gave some weight to Dr. Scardino's opinion. [*Id.* at 51].

The ALJ also noted that Dr. Centanni's conclusions are inconsistent with plaintiff's own testimony, which he discusses. [*Id.* at 51].   Plaintiff testified that after using a computer mouse for an hour and doing dishes, she has to rest her hands for several hours. [*Id.* at 18-19].   Plaintiff testified that she can lift five pounds with her right hand and has no lifting limitations with her left hand. [*Id.* at 23].   The ALJ also determined, however, that plaintiff goes shopping, folds clothes and uses her computer. [*Id.* at 50].   He noted that in her Function Report, dated November 2008, plaintiff noted that she is able to prepare meals, fold laundry, care for her cat and care for her own personal needs. [*Id.* at 50, 124-31].

The ALJ also emphasized plaintiff's testimony that she had stopped working in June 2008 not because of her impairments, but because her sister had moved, and she wanted to be closer to her family. [*Id.* at 14, 50].   In addition, plaintiff testified that she resumed looking for work in February 2009. [*Id.* at 16, 18]; *see also Melton v. Apfel*, 181 F.3d 939, 942 (8th Cir. 1999) (holding that searching for work undermines claimant's allegation that he can no longer work).   Defendant is also correct in noting that Social Security regulations state that a claimant will not be considered

10

disabled if the claimant remains unemployed because of lack of work, inability to find work or unwillingness to perform a particular type of work.  20 C.F.R. § 404.1566(c)(1)-(8); *Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988).

Moreover, the following exchange occurred at the oral hearing:

Q.    And so why – tell me in your own words why you think you couldn't do, for example, a sedentary job like you were doing at Jewelry TV if it didn't require that sort of repetitive kind of use of the computer type motion.

A.    Oh, I don't think there'd be any reason if I didn't have to use a mouse or type for any period of time, I think I'd be okay.  I think that I can manage it very well.

[Adm. Rec. at 26].  Plaintiff thus admitted that there is no reason that she can not perform a sedentary job that does not require the repetitive use of a computer and that she could manage such a job "very well."  For the foregoing reasons, the Court finds that substantial evidence supports the ALJ's conclusion that Dr. Centanni's opinion conflicted with other credible medical reports in the record and plaintiff's own testimony and was unsupported by objective medical evidence. [*Id.* at 51].

Lastly, the Court notes that Dr. Centanni's report, as noted above, is a mere two-page check-the-box standard form.  Dr. Centanni provides no explanation for the results on the form.  Accordingly, the ALJ could have rejected Dr. Centanni's opinion as conclusory.  20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.").  Dr. Centanni merely checked the boxes, signed her name and dated the form.  There is no objective medical evidence to support the conclusions at which she arrived on the form.

11

Plaintiff's reliance on SSR 96-9p is misplaced.  Notwithstanding the testimony of the VE, the Court finds, for the reasons outlined above, that substantial evidence existed in the record for the ALJ to conclude that plaintiff may frequently handle, finger and feel.  There is no evidence in the record – and plaintiff points to none – that the ALJ himself violated SSR 96-9p by so concluding. Thus, plaintiff's argument is without merit.  Moreover, plaintiff's argument on this point is as follows:

> The findings of a vocational expert cannot offset the instructions of a Social Security Ruling and should be relied upon only when the limitation is "less significant."
> It seems pretty certain that a preclusion of "significant" use of the hands constitutes more than a "less significant" limitation.

(Pl.'s Mem. Supp. at p. 3).  Such a conclusory and unsupported argument that cites to no evidence in the record is unavailing.  *See, e.g., Maredia v. Gonzalez*, 223 Fed. Appx. 402, 2007 WL 870368, at *1 (5th Cir. Mar. 22, 2007) (noting that conclusory and unsupported assertions are unavailing).

## VI.    Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that the plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion be GRANTED and that plaintiff's complaint be dismissed with prejudice.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge;

and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 29th day of April, 2011.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**